IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERONIMO ROSADO FRATICELLI, JR. **Plaintiff** | : : : | CIVIL ACTION |
| v. | : : : | |
| PHYLLIS R. STRETEL, et al. **Defendants** | : : | NO. 17-3343 |

## MEMORANDUM

**JONES, J.**                                                                                                **NOVEMBER 30, 2017**

Plaintiff Geronimo Rosado Fraticelli, Jr.,[1] brings this civil action pursuant to 42 U.S.C. § 1983, predominately based on a series of arrests and convictions that occurred between 2010 and 2013. Plaintiff seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant plaintiff leave to proceed *in forma pauperis* and dismiss his complaint.

### I. FACTS[2]

The complaint is lengthy, difficult to understand at times, and includes numerous exhibits. Plaintiff primarily raises claims based on a series of arrests, convictions, and run-ins with police officers going back to 2010. Although plaintiff repeatedly admits to selling drugs, he believes that his run-ins with law enforcement stem from a conspiracy among judges, police officers, and

---

[1] The caption of the complaint indicates that plaintiff's name is Geronimo Rosado Fraticelli, Jr. However, he is identified as Jeronimo Rosado on criminal dockets and also goes by Geronimo Rosado.

[2] The following facts are taking from the complaint, exhibits attached to the complaint, and publicly available dockets for state criminal proceedings underlying plaintiff's federal claims. Although the complaint is pled as a class action and includes claims related to other individuals, plaintiff has already been informed that he may not pursue claims on behalf of others, whether individually or in the form of a class action. Indeed, the Court has already dismissed the two other individuals named as plaintiffs from this case. In any event, the allegations and exhibits pertain to plaintiff's arrests, convictions, and incarceration, so there is no basis for a class action here.

1

prosecutors to retaliate against him for refusing to testify in two criminal cases in November of 2010 and March of 2011.

Plaintiff alleges that, after he failed to testify at a March 2011 hearing in a criminal case, the prosecutor pointed out that plaintiff was scheduled to see his probation officer, Renna Menna, the next week, and threatened that his refusal to testify could lead to a probation violation. At his March 17, 2011 appointment with Menna, plaintiff was required to take a urine test, asked why he did not cooperate with the district attorney, and told that he was working on a probation violation because he had not been paying court costs or fines. It does not appear that plaintiff was charged with a violation at that time.

In July of 2011, plaintiff was arrested and charged criminally after drugs were found in his car following a traffic stop.[3] Plaintiff believes that the stop was illegal. He ultimately pled guilty to use or possession of drug paraphernalia in exchange for a sentence of six months of probation. *See Commonwealth v. Rosado*, Docket No. CP-15-CR-0004302-2011 (Chester Cty. Ct. of Common Pleas). He was also required to participate in a drug or alcohol treatment program. For clarity, the Court will refer to this criminal proceeding as "Case 4302-2011."

Plaintiff was next arrested on April 17, 2012—approximately three months after his plea—pursuant to an arrest warrant based on three drug transactions that took place in March and April. The complaint describes how police informants arranged drug transactions with plaintiff and a friend, Richard Mack, and appears to acknowledge that plaintiff participated in the transactions. Plaintiff believes the controlled buys were illegal because the police used an informant, because

---

[3] The complaint alleges that this arrest occurred in January, but the docket reflects that the offense occurred in June and that charges were filed in July.

a minor was in the car when the transaction occurred, because the wire worn by the informant was allegedly tampered with, and for other reasons.[4]

According to plaintiff, the officers who arrested him in 2012, Detective McFarlane and Officer DiBattista, grabbed him in an aggressive manner and refused to show him the warrant for his arrest. When plaintiff was strip searched at the police station, officers found seven bags of crack tied around the base of plaintiff's penis. The officers attempted to process plaintiff by getting his fingerprints, but plaintiff refused to comply.

After some time, during which plaintiff claims he was hungry and stressed, plaintiff indicated that he would agree to be processed if the officers disclosed the warrant. Detective McFarlane agreed, but then refused to disclose the arrest warrant after processing plaintiff. Plaintiff was taken to an interrogation room and asked to cooperate with the drug task force. Plaintiff refused and was taken to a holding cell. He alleges that McFarlane harassed him by telling him he was going back to jail and calling him an idiot.

Plaintiff was charged in Chester County with various drug offenses in a proceeding that the Court will refer to as "Case 1666-2012." *See Commonwealth v. Rosado*, Docket No. CP-15-CR-0001666-2012 (Chester Cty. Ct. of Common Pleas). He was also charged with violating probation in Case 4302-2011. *Commonwealth v. Rosado*, Docket No. CP-15-CR-0004302-2011 (Chester Cty. Ct. of Common Pleas). Plaintiff alleges that during his arraignment in Case 1666-2012, the judge accepted Detective McFarlane's recommendation that plaintiff should not be

---

[4] Plaintiff alleges that he knew he was being set up, so he instructed his customer to bring her minor child with her because he believed the presence of the minor child would render the controlled purchase unconstitutional. (Compl. at 14.) Plaintiff sought to raise claims in this civil action on behalf of the minor child, but the Court dismissed the child as a party to this case because plaintiff may not bring claims on behalf of others. Plaintiff also appears to be claiming that the police should not be allowed to pressure individuals who have drug charges pending against them, such as the informant used in his case, to cooperate in exchange for leniency.

granted bail. Plaintiff was transported to a holding cell for four hours, and transferred to the Chester County Prison.

Plaintiff unsuccessfully challenged the arrest warrant on several grounds in a preliminary hearing before Magistrate Judge Mark A. Bruno in Case 1666-2012, including on the grounds mentioned in the complaint. (Comp. at 11 & 16.) It is apparent that plaintiff believes the warrant—and entire criminal proceeding—was illegal and that Judge Bruno erroneously allowed it to proceed. Plaintiff also takes issue with Detective McFarlane's testimony and his public defender, who he claims "ignored all relevant facts" in an effort to secure a judgment against him. (*Id.* at 11.) He is also dissatisfied for various reasons with how Judge Phyllis R. Streitel, who presided over both cases, handled those cases.

On November 9, 2012, Judge Streitel found plaintiff guilty of violating probation in Case 4302-2011 and sentenced him to six to twelve months with credit for time-served. On the same day, Judge Streitel set nominal bail for plaintiff in Case 1666-2012, which plaintiff paid. He was apparently released on house arrest at that time.

Plaintiff claims that he was followed by police officers and stopped on old warrants or for illegitimate reasons after his release and, more generally, during the times when he was not incarcerated from 2010 through May 5, 2013. One such stop occurred in April of 2013, after which Officer James Gordon cited plaintiff for driving while his license was suspended or revoked.[5] *See Commonwealth v. Rosado*, Docket No. MJ-15104-TR-0001613-2013. Plaintiff was given counsel in connection with the case. Although plaintiff informed counsel that he would prefer to represent himself, he claims he was coerced to undergo trial with counsel's

---

[5] Documents attached to the complaint reflect that plaintiff has a long history of driving without a license.

4

representation. Detective Gordon testified against plaintiff and Magisterial District Judge Gwenn S. Knapp found plaintiff guilty.

Plaintiff appealed and was given new counsel on appeal, even though he did not want counsel. On November 19, 2013, after a trial de novo during which Officer Gordon testified against plaintiff, Judge Charles Smith found plaintiff guilty, sentenced him to ninety days of imprisonment, and fined him. *See Commonwealth v. Rosado*, Docket No. CP-15-SA-0000292-2013 (Chester Cty. Ct. of Common Pleas). Plaintiff believes he was wrongfully convicted based on false testimony and that his fine is excessive.

On April 19, 2013, shortly after the traffic stop but prior to the resolution of his traffic case, plaintiff was charged with violating probation in 4302-2011 because he failed to pay fines and court costs, and failed to complete outpatient treatment. Ten days later, he pled guilty to possession with the intent to deliver in 1666-2012, and received a sentence of eighteen months to three years of imprisonment followed by two years of special probation. Plaintiff alleges that his plea was coerced and that his sentence is unconstitutional; he claims that he wanted to proceed to trial but his attorney advised him to take a plea.

Plaintiff was taken to Chester County Prison and transferred to the State Correctional Institution at Graterford on May 29, 2013. In the course of his transfer, an individual identified as "John Doe (Vehicle Lock Box Srgnt)" stated that inmates were only allowed ten letters and threw out plaintiff's legal materials. When plaintiff objected, the officer ordered plaintiff to "shut up" or he would be sent to the R.H.U. Plaintiff filed a grievance but his grievance was denied. At some point, he was transferred to the State Correctional Institution at Dallas to serve his sentence.

Plaintiff claims that he had served his maximum sentence by April 29, 2016, but that he remained incarcerated at the State Correctional Institution at Dallas for approximately three months beyond that date. He alleges that since his release, officers have been driving by his home, watching him, and following him. Plaintiff filed a motion in state court following his release in which he sought the return of a blackberry torch phone that he believes contained exculpatory evidence related to his cases. At some point after filing the motion, he was driving with a friend when they were almost run off the road by an unmarked truck travelling in the opposite direction, which they believed was driven by a police officer.

Plaintiff was subsequently contacted by Detective DeShullo, who arranged a meeting with District Attorney Walchberger and plaintiff about plaintiff's motion for the return of the phone. At the meeting, Detective DeShullo informed plaintiff that the police department did not have the phone, offered him $50, told him to "be careful and avoid accidents," and pressured plaintiff to cooperate by advising him that he could sell "his drugs as [long as] you help me out but there [is] no guarantee [because] as I told you there [is] no more loyalty in business." Walchberger added that he was sent by Judge Streitel to resolve the matter but that he was unable to compensate plaintiff for the phone. Based on the meeting, plaintiff believes the traffic incident in which he narrowly avoided an accident was, in fact, a hit ordered on him by the Judge in his case. Based on that belief, he withdrew his motion.

On July 26, 2017, plaintiff filed the instant civil action against: (1) Judge Streitel, spelled Stretel in the caption; (2) DiBattista (the officer who arrested plaintiff in 2012); (3) Charles B. Smith (the Judge who convicted plaintiff of a traffic violation); (4) the Chester County Commissioner; (5) Andrew McFarlene (the other officer who arrested plaintiff in 2012); (6) Lawrence Harmelin (a public defender who represented plaintiff); (7) Heather Kelly (the public

6

defender who represented plaintiff in his traffic case); (8) the Commonwealth of Pennsylvania; (9) Christopher De Barrena-Sarobe (an assistant district attorney who prosecuted plaintiff); (10) Thomas P. Hogan (the Chester County District Attorney); (11) James Gordon (the officer who arrested and cited plaintiff for a traffic violation in 2013); (12) the United States; (13) Mitchel Baylarian (another public defender assigned to represent plaintiff); (14) Erik T. Walschburger, spelled Walchburger in the caption (another assistant district attorney assigned to plaintiff's cases); (15) Louis Deshullo (police officer); (16) Gwenn Knapp (a Magistrate Judge who presided over hearings in plaintiff's cases); (17) Joshua Scarpello (defense counsel retained by plaintiff); (18) the Chester County Sheriff's Department; (19) Mark A. Bruno (a Magistrate Judge who presided over hearings in plaintiff's cases); (20) the Chester County Police Department; (21) Vehicle Lock Box Sargent (apparently an employee who worked at SCI-Graterford during plaintiff's incarceration there in 2013); (22) Graterford Facility Manager/Warden John Doe; (23) Renna Menna (plaintiff's probation officer); (24) Nikki Kerns; (25) Jodi Kerns; (26) Richard Allen Mack; (27) State Attorney General; and (28) various John and Jane Doe defendants, including an arraignment judge and a public defender. The complaint indicates that plaintiff is raising claims pursuant to 42 U.S.C. §§ 1983, 1985 & 1986, 18 U.S.C. §§ 241 & 242, and 28 U.S.C. § 1361, based primarily on his arrests, prosecutions, convictions, and incarcerations. He seeks monetary damages, expungement of his convictions, vacatur of his sentences, return of his blackberry torch phone, and other miscellaneous relief. Although plaintiff has filed numerous motions in state court challenging his several convictions, his motions have not been successful. He also filed an unsuccessful *habeas* petition in this Court prior to filing this case. *See Rosado v. Mahally*, E.D. Pa. Civ. A. No. 16-1270.

## II. STANDARD OF REVIEW

The Court grants plaintiff leave to proceed *in forma pauperis* because it appears that he is not capable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) require the Court to dismiss the complaint if it is frivolous or fails to state a claim. A complaint is frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Generalized or conclusory allegations do not suffice to state a claim. *Id.* The Court may also consider documents attached to the complaint and matters of public record in determining whether a plaintiff states a claim. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). Additionally, the Court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint. *See Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006); *cf. Ball v. Famiglio*, 726 F.3d 448, 459 (3d Cir. 2013), *abrogated on other grounds by, Coleman v. Tollefson*, 135 S. Ct. 1759, 1763 (2015). As plaintiff is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

### A. Claims Based on Criminal Statutes

The complaint suggests that plaintiff intends to raise claims under 18 U.S.C. §§ 241 and 242, as well as other criminal statutes. However, those criminal statutes do not give rise to a basis for civil liability. *See Cent. Bank of Dover, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone[.]"); *Colon-Montanez v. Pennsylvania Healthcare Serv. Staffs*, 530 F. App'x 115, 118 (3d Cir. 2013) (per curiam) ("[T]hese criminal statutes [18 U.S.C. §§ 241 and 242] provide no private right of action for use by a litigant such as Colon–Montanez."). Accordingly, if plaintiff is raising claims under criminal statutes, those claims are dismissed with prejudice as legally baseless.

### B. Claims Based on 28 U.S.C. § 1361

The complaint references 28 U.S.C. § 1361, which grants district courts jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." If plaintiff sought to have this court compel state officials to take action in his criminal cases, his claims fail because § 1361 does not afford a remedy against state actors. *See Harman v. Datte*, 427 F. App'x 240, 243 (3d Cir. 2011) ("The District Court properly concluded that such a remedy was not available because, to the extent they sought mandamus relief in their complaint, 28 U.S.C. § 1361 only affords a remedy against persons who are employees or officers of the United States and neither of the defendants fall in these categories."). There is no basis for mandamus relief here so the Court will dismiss plaintiff's claims with prejudice as legally baseless.

9

## C. Civil Rights Claims Pursuant to 42 U.S.C. §§ 1985 & 1986

The complaint also suggests that plaintiff seeks to bring claims under 42 U.S.C. §§ 1985(3) and 1986. "[T]o state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997). "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "[A] bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

The complaint does not allege a plausible basis from which this Court could conclude that a conspiracy existed among the defendants. Additionally, plaintiff does not allege the type of race or class based discrimination that is required to state a claim under § 1985(3). *See Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006) (explaining that "§ 1985(3) defendants must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct"). As plaintiff has not stated a claim under § 1985, he also cannot state a claim under § 1986. *See Clark v. Clabaugh*, 20 F.3d 1290, 1295 n. 5 (3d Cir.1994) (failure to state a § 1985 claim is fatal to his § 1986 claim).

## D. Claims Against the United States and the Commonwealth of Pennsylvania

There is no legal basis for plaintiff's claims against the United States and the Commonwealth of Pennsylvania. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Furthermore, the

Commonwealth of Pennsylvania is entitled to Eleventh Amendment immunity from claims under 42 U.S.C. § 1983 and is not considered a "person" subject to liability under that statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989). As there is no legal basis for a claim against those defendants, the Court will dismiss plaintiff's claims against them with prejudice.

### E. Conspiracy Claims Under 42 U.S.C. § 1983

The Court understands plaintiff to be claiming that his arrests, convictions, and other bad things that have happened to him are the product of a vast conspiracy among judges, prosecutors, public defenders, and possibly others. "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "[A] bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). To state a claim for a judicial conspiracy, a complaint should allege facts concerning "the approximate time when the [conspiratorial] agreement was made, the specific parties to the agreement (i.e., which judges), the period of the conspiracy, [and] the object of the conspiracy." *Great Western*, 615 F.3d at 179.

Here, plaintiff alludes to the existence of a government conspiracy, but he has not alleged sufficient facts to support a plausible conclusion that his treatment by authorities over the years has stemmed from a conspiracy against him rather than his own criminal conduct. Furthermore, nothing alleged plausibly supports concerted actions by the defendants or describes the contours of the alleged conspiracy. Accordingly, to the extent plaintiff is resting his complaint on conspiracy claims, those claims fail.

## F. Challenges to Plaintiff's Convictions Under 42 U.S.C. § 1983

Plaintiff's complaint predominantly challenges the constitutionality of his numerous state convictions pursuant to 42 U.S.C. § 1983, and asks this Court to vacate those convictions, invalidate his criminal sentences, and reward him damages for having been wrongfully convicted. "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Accordingly, any attempts to vacate plaintiff's convictions must be pursued in a *habeas* case rather than a civil rights action.[6]

Furthermore, "to recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)— if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)). As plaintiff's convictions and sentences have not been reversed, expunged, or otherwise invalidated, none of his claims challenging his

---

[6] Notably, plaintiff already filed a petition for a writ of *habeas corpus* challenging some of the convictions underlying his current civil rights claims. *See Rosado v. Mahally*, E.D. Pa. Civ. A. No. 16-1270. The petition was dismissed in May of 2016.

12

convictions are currently cognizable under § 1983. In other words, plaintiff cannot raise claims challenging the constitutionality of any aspect of the legal proceedings leading to his convictions, or the failure of the state courts to vacate those convictions. That is so regardless of whether *habeas* relief is still available to plaintiff. *See Williams v. Consovoy*, 453 F.3d 173, 179 (3d Cir. 2006). The Court will dismiss any such non-cognizable claims without prejudice to plaintiff filing a new complaint only in the event those convictions are ever vacated.

## G. Absolute Judicial Immunity

Plaintiff raises claims against several judges—Judge Streitel, Judge Smith, Magistrate Judge Knapp, Magistrate Judge Bruno, and an unidentified Magistrate Judge—based on the manner in which those judges handled his criminal cases. Judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (per curiam). As it is apparent that plaintiff is suing those Judges based on the manner in which they ruled in or handled his criminal cases, his claims are barred by judicial immunity. The only claim against the judicial defendants that would not be barred by absolute judicial immunity is plaintiff's allegation that Judge Streitel ordered a "hit" on him, which will be discussed below.

## H. Absolute Prosecutorial Immunity

Plaintiff raises several claims against assistant district attorneys and district attorneys—Christopher De Barrena-Sarobe, Thomas P. Hogan, and Erik T. Walschburger—that are apparently based on those defendants' role in prosecuting him. However, prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . .

13

presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). District Attorneys and other supervisory prosecutors are likewise entitled to absolute immunity from claims based on their role in pursuing a prosecution on behalf of the Commonwealth. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009). Accordingly, plaintiff cannot bring any claims against prosecutors based on their involvement in prosecuting his criminal cases. The only claim against the prosecutorial defendants that is not barred by absolute prosecutorial immunity are plaintiff's claims against Walschburger based on his alleged destruction of plaintiff's phone and participation in a conspiracy to have plaintiff killed.

### I. Claims Against Plaintiff's Attorneys

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff has sued several attorneys assigned to represent him—Lawrence Harmelin, Heather Kelly, Mitchel Baylarian, Joshua Scarpello, and John Doe defendants—but those attorneys are not state actors for purposes of § 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." (footnote omitted)); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court."). Although individuals who are not state actors may be treated as state actors if they act in concert with state officials, plaintiff has not pled sufficient facts to plausibly suggest that his attorneys could be treated as state actors on that basis. Accordingly, any claims against those defendants will be dismissed.

14

## J. Challenges to Plaintiff's Arrests are Time-Barred

Plaintiff's challenges to his arrests are all time-barred. Plaintiff challenges several arrests that took place between 2011 and 2013. Pennsylvania's two-year limitations period applies to those claims. See 42 Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007). "[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace*, 549 U.S. at 397.

Plaintiff filed this civil action on July 26, 2017. However, the challenged arrests all took place between 2011 and 2013, and plaintiff's criminal dockets reflect that he was detained pursuant to legal process shortly after he was arrested on those numerous occasions. The complaint also reflects that plaintiff was well aware of the alleged legal defects in the warrant that served as the basis for his arrest in 2012, and that he unsuccessfully asserted his challenges in state court. As it is apparent from the complaint and exhibits that claims based on plaintiff's arrests accrued more than two years before he filed this case, the Court will dismiss his claims as untimely. The Court will dismiss those claims with prejudice because amendment would be futile.

## K. Other Time-Barred Claims

Plaintiff raises other claims that are time-barred. He appears to be challenging the constitutionality of a range of police conduct beginning in 2010, including several stops and "harassment" that took place between 2010 and 2013. Liberally construing the complaint, plaintiff also raises claims based on how Detective McFarlane and Officer DiBattista treated him following his 2012 arrest, including by searching him, failing to explain why he was incarcerated, and otherwise mistreating him. The Court also understands plaintiff to be pursuing

15

claims based on a 2011 meeting with Ms. Menna—his probation officer at the time—and his 2013 stay at SCI-Graterford, where a Sergeant allegedly disposed of his legal materials.

The applicable two-year limitations period began to run from the time plaintiff "knew or should have known of the injury upon which [his] action is based." *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). The vast majority of conduct at issue in the complaint, leaving aside plaintiff's convictions, relates to events that took place between 2010 and 2013. It is apparent from the face of the complaint and the attached exhibits that plaintiff knew or should have known of the events giving rise to any constitutional claims at the time the relevant conduct occurred. As plaintiff did not bring this case until July 26, 2017, his claims based on matters pertaining to police conduct, his probation officer, his treatment in prison, or other events that took place between 2010 and 2013, are clearly time-barred.

## L. Claims Against High-Ranking Officials

Plaintiff appears to have sued some high-ranking officials, such as the Commissioner of Chester County and the Pennsylvania Attorney General, because of their high-level positions in government as opposed to their involvement in the claimed constitutional violations. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *Powell v. Weiss*, 757 F.3d 338, 346 (3d Cir. 2014). In other words, supervisors and high-ranking officials are not liable under § 1983 based solely on constitutional violations committed by their subordinates. As nothing in the complaint reflects that the Commissioner of Chester County or the Pennsylvania Attorney General participated in the violation of plaintiff's rights, whether due to their own conduct or their maintenance of a policy or custom that violated plaintiff's rights, he has not stated a claim against them. *See*

16

*Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 320 (3d Cir. 2014), *reversed on other grounds*, *Taylor v. Barkes*, 135 S. Ct. 2042 (2015).

**M. Remaining Claims**

The only claims that remain are plaintiff's claims based on the following allegations: (1) that plaintiff was held beyond his maximum sentence at SCI-Dallas; (2) that police officers are following plaintiff and watching him since his release from incarceration in 2016; and (3) that defendants DeShullo, Walschburger, and Judge Streitel conspired to murder plaintiff and destroyed a phone that was apparently seized in connection with one of his many arrests.

First, it is possible that plaintiff could state a claim for violation of his Eighth Amendment rights based on his allegation that he was held beyond his maximum sentence at SCI-Dallas.[7] *See Montanez v. Thompson*, 603 F.3d 243, 250 (3d Cir. 2010) (citing *Sample v. Diecks*, 885 F.2d 1099, 1108 (3d Cir. 1989)). A plaintiff must establish three elements to prevail on an Eighth Amendment claim against a prison official for wrongful incarceration: "(1) [the] prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) a causal connection between the official's response to the problem and the unjustified detention." *Id.* at 252. Here, plaintiff has not alleged any facts establishing that any of the named defendants were responsible for his detention at SCI-Dallas beyond his maximum sentence, and it is not clear why any of the defendants—none of whom are officials at SCI-Dallas—would be responsible for those events. Additionally, the events giving

---

[7] If, however, plaintiff is challenging the calculation of his sentence, and that calculation has never been reversed or otherwise invalidated, his claims are not cognizable in a civil rights action. *See Royal v. Durison*, 254 F. App'x 163, 165-66 (3d Cir. 2007).

17

rise to this claim occurred in the Middle District of Pennsylvania, such that venue for this claim would be more appropriate in that district.

Second, as to plaintiff's claims pertaining to recent police activity since his release in 2016, although plaintiff alleges that police have generally followed or watched him, his allegations are vague and conclusory and do not relate specifically to the named defendants in this case. He does not appear to allege that police are engaging in activity such as searches or seizures that would trigger the protections of the Fourth Amendment. Instead, plaintiff's complaints appear to be that police are watching him or have followed him, but those allegations do not, without more, give rise to a claim that law enforcement officers violated his constitutional rights. If plaintiff is alleging that the police have violated the Constitution in connection with their recent surveillance of him, the basis for his constitutional claims is not clear to the Court. Furthermore, although plaintiff challenges a pattern of activity, he has not clearly identified a municipal policy or custom that would support a basis for liability against a municipal entity. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009).

Third, as to plaintiff's allegation that defendants DeShullo, Walschburger, and Judge Streitel conspired to murder him and destroyed property that was apparently seized in connection with one of his many arrests, his allegations fail to state a conspiracy claim. As noted above, "to properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010); *see also Capogrosso v. The Supreme Court of N.J.*, 588 F.3d 180, 184-85 (3d Cir. 2009). Here, plaintiff's claim is based on the fact that he was almost run off of the road after filing a motion for the return of his phone. He believes that incident

18

resulted from a "hit" put on him by Judge Streitel, DeShullo, and Walschburger because of a subsequent meeting with DeShullo and Walschburger about his motion during which DeShullo told plaintiff that the phone had been destroyed and advised him to "be careful and avoid accidents." It is quite a stretch to infer from those events that the defendants conspired to murder plaintiff. As his allegations do not support a plausible conspiracy, the Court will dismiss this claim. Additionally, plaintiff cannot sustain a constitutional claim based on allegations that DeShullo and/or Walschburger destroyed his property because the Pennsylvania Tort Claims Act provides plaintiff with an adequate state remedy. *See Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property).

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss plaintiff's complaint. Plaintiff will be given leave to file an amended complaint only as to certain claims as set forth more clearly in the Court's accompanying order. Plaintiff's motion for counsel will be denied without prejudice to renewal in the event he can state a plausible basis for a constitutional claim. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether to grant counsel, "the district court must consider as a threshold matter the merits of the plaintiff's claim"). An appropriate order follows.