## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GERONIMO ROSADO FRATICELLI, JR.** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PHYLLIS R. STRETEL, et al.** | : | **NO.  17-3343** |
| **Defendants** | : | |

### MEMORANDUM

**JONES, J.**                                                                                                       **FEBRUARY 28, 2018**

In a November 30, 2017 Memorandum and Order, the Court granted plaintiff Geronimo Rosado Fraticelli, Jr. leave to proceed *in forma pauperis* and dismissed his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) with leave to file an amended complaint.[1]  Mr. Rosado returned with the following submissions, which are currently before the Court: (1) a "Motion for Leave to File Leave to File Amended Complaint for Permanet [sic] Injunction and Other Equitable Relief" (ECF No. 12); (2) an exhibit (ECF No. 13); (3) a document docketed as "Affidavit and Certificate of Merit" (ECF No. 14); and a "Certificate of Merit and Resolution" (ECF No. 15). For the following reasons, the Court will treat Mr. Rosado's submissions as an amended complaint and dismiss the amended complaint pursuant to 28 U.S.C. § 1915.

### I.      FACTS AND PROCEDURAL HISTORY

Mr. Rosado filed this civil action on July 26, 2017.  His initial complaint was lengthy, difficult to understand, and included numerous exhibits.  The complaint primarily raised claims based on a series of arrests, convictions, and run-ins with police officers going back to 2010.

---

[1] The caption of the complaint indicates that plaintiff's name is Geronimo Rosado Fraticelli, Jr. However, he is identified as Jeronimo Rosado on criminal dockets and also goes by Geronimo Rosado.  The Court will refer to plaintiff as Mr. Rosado.

1

Although Mr. Rosado repeatedly admitted to selling drugs in his complaint, he also suggested that his run-ins with law enforcement stemmed from a conspiracy among judges, police officers, and prosecutors to retaliate against him for refusing to testify in two criminal cases in November of 2010 and March of 2011.

Mr. Rosado alleged that, after he failed to testify at a March 2011 hearing in a criminal case, the prosecutor pointed out that Mr. Rosado was scheduled to see his probation officer, Renna Menna, the next week, and threatened that his refusal to testify could lead to a probation violation. At his March 17, 2011 appointment with Menna, Mr. Rosado was required to take a urine test, asked why he did not cooperate with the district attorney, and told that he was working on a probation violation because he had not been paying court costs or fines. It does not appear that Mr. Rosado was charged with a violation at that time.

In July of 2011, Mr. Rosado was arrested and charged criminally after drugs were found in his car following a traffic stop.[2] Mr. Rosado believes that the stop was illegal. He ultimately pled guilty to use or possession of drug paraphernalia in exchange for a sentence of six months of probation. *See Commonwealth v. Rosado*, Docket No. CP-15-CR-0004302-2011 (Chester Cty. Ct. of Common Pleas). He was also required to participate in a drug or alcohol treatment program. For clarity, the Court will refer to this criminal proceeding as "Case 4302-2011."

Mr. Rosado was next arrested on April 17, 2012—approximately three months after his plea—pursuant to an arrest warrant based on three drug transactions that took place in March and April. The complaint described how police informants arranged drug transactions with Mr. Rosado and a friend, Richard Mack, and appeared to acknowledge that Mr. Rosado participated

---

[2] The complaint alleged that this arrest occurred in January, but the docket reflects that the offense occurred in June and that charges were filed in July.

in the transactions. Mr. Rosado believed the controlled buys were illegal because the police used an informant, because a minor was in the car when the transaction occurred, because the wire worn by the informant was allegedly tampered with, and for other reasons.[3]

According to the complaint, the officers who arrested Mr. Rosado in 2012, Detective McFarlane and Officer DiBattista, grabbed him in an aggressive manner and refused to show him the warrant for his arrest. When Mr. Rosado was strip searched at the police station, officers found seven bags of crack tied around the base of his penis. The officers attempted to process Mr. Rosado by getting his fingerprints, but he refused to comply.

After some time, during which Mr. Rosado claimed he was hungry and stressed, Mr. Rosado indicated that he would agree to be processed if the officers disclosed the warrant. Detective McFarlane agreed, but then refused to disclose the arrest warrant after processing Mr. Rosado. Mr. Rosado was taken to an interrogation room and asked to cooperate with the drug task force. Mr. Rosado refused and was taken to a holding cell. He alleged that McFarlane harassed him by telling him he was going back to jail and calling him an idiot.

Mr. Rosado was charged in Chester County with various drug offenses in a proceeding that the Court will refer to as "Case 1666-2012." *See Commonwealth v. Rosado*, Docket No. CP-15-CR-0001666-2012 (Chester Cty. Ct. of Common Pleas). He was also charged with violating probation in Case 4302-2011. *Commonwealth v. Rosado*, Docket No. CP-15-CR-0004302-2011 (Chester Cty. Ct. of Common Pleas). Mr. Rosado alleged in his initial complaint that during his

---

[3] Mr. Rosado alleged that he knew he was being set up, so he instructed his customer to bring her minor child with her because he believed the presence of the minor child would render the controlled purchase unconstitutional. (Compl. at 14.) Mr. Rosado sought to raise claims in this civil action on behalf of the minor child, but the Court dismissed the child as a party to this case because Mr. Rosado may not bring claims on behalf of others. The complaint also appeared to be claiming that the police should not be allowed to pressure individuals who have drug charges pending against them, such as the informant used in Mr. Rosado's case, to cooperate in exchange for leniency.

arraignment in Case 1666-2012, the judge accepted Detective McFarlane's recommendation that he should not be granted bail. Mr. Rosado was transported to a holding cell for four hours and transferred to the Chester County Prison.

Mr. Rosado unsuccessfully challenged the arrest warrant on several grounds in a preliminary hearing before Magistrate Judge Mark A. Bruno in Case 1666-2012, including on the grounds mentioned in the complaint. (Comp. at 11 & 16.) It is apparent that Mr. Rosado believes the warrant—and entire criminal proceeding—was illegal and that Judge Bruno erroneously allowed it to proceed. The complaint also took issue with Detective McFarlane's testimony and Mr. Rosado's public defender, who Mr. Rosado claimed "ignored all relevant facts" in an effort to secure a judgment against him. (*Id.* at 11.) The complaint reflected that Mr. Rosado was also dissatisfied for various reasons with how Judge Phyllis R. Streitel, the judge assigned to his cases, handled his cases.

On November 9, 2012, Judge Streitel found Mr. Rosado guilty of violating probation in Case 4302-2011 and sentenced him to six to twelve months with credit for time-served. On the same day, Judge Streitel set nominal bail for Mr. Rosado in Case 1666-2012, which Mr. Rosado paid. He was apparently released on house arrest at that time.

Mr. Rosado claimed that he was followed by police officers and stopped on old warrants or for illegitimate reasons after his release and, more generally, during the times when he was not incarcerated from 2010 through May 5, 2013. One such stop occurred in in April of 2013, after which Officer James Gordon cited Mr. Rosado for driving while his license was suspended or revoked.[4] *See Commonwealth v. Rosado*, Docket No. MJ-15104-TR-0001613-2013. Mr. Rosado was given counsel in connection with the case. Although Mr. Rosado informed counsel

---

[4] Documents attached to the complaint reflect that Mr. Rosado has a long history of driving without a license.

that he would prefer to represent himself, he claims he was coerced to undergo trial with counsel's representation. Detective Gordon testified against Mr. Rosado and Magisterial District Judge Gwenn S. Knapp found him guilty.

Mr. Rosado appealed and was given new counsel on appeal, even though he did not want counsel. On November 19, 2013, after a trial de novo during which Officer Gordon testified against Mr. Rosado, Judge Charles Smith found Mr. Rosado guilty, sentenced him to ninety days of imprisonment, and fined him. *See Commonwealth v. Rosado*, Docket No. CP-15-SA-0000292-2013 (Chester Cty. Ct. of Common Pleas). Mr. Rosado believes that he was wrongfully convicted based on false testimony and that his fine was excessive.

On April 19, 2013, shortly after the traffic stop but prior to the resolution of his traffic case, Mr. Rosado was charged with violating probation in 4302-2011 because he failed to pay fines and court costs, and failed to complete outpatient treatment. Ten days later, he pled guilty to possession with the intent to deliver in 1666-2012, and received a sentence of eighteen months to three years of imprisonment followed by two years of special probation, although his special probation was recently rescinded. Mr. Rosado alleged that his plea was coerced and that his sentence is unconstitutional.

Mr. Rosado was taken to Chester County Prison and transferred to the State Correctional Institution at Graterford on May 29, 2013. In the course of his transfer, an individual identified as "John Doe (Vehicle Lock Box Srgnt)" stated that inmates were only allowed ten letters and threw out Mr. Rosado's legal materials. When Mr. Rosado objected, the officer ordered Mr. Rosado to "shut up" or he would be sent to the R.H.U. Mr. Rosado filed a grievance but his grievance was denied. At some point, he was transferred to the State Correctional Institution at Dallas to serve his sentence.

Mr. Rosado claimed that he had served his maximum sentence by April 29, 2016, but that he remained incarcerated at the State Correctional Institution at Dallas for approximately three months beyond that date. He alleged that since his release, officers have been driving by his home, watching him, and following him. Mr. Rosado filed a motion in state court following his release in which he sought the return of a blackberry torch phone that he believes contained exculpatory evidence related to his cases. At some point after filing the motion, he was driving with a friend when they were almost run off the road by an unmarked truck travelling in the opposite direction, which they believed was driven by a police officer.

Mr. Rosado was subsequently contacted by Detective DeShullo, who arranged a meeting with District Attorney Walschberger and Mr. Rosado about Mr. Rosado's motion for the return of the phone. At the meeting, Detective DeShullo informed Mr. Rosado that the police department did not have the phone, offered him $50, told him to "be careful and avoid accidents," and pressured Mr. Rosado to cooperate by advising him that he could sell "his drugs as [long as] you help me out but there [is] no guarantee [because] as I told you there [is] no more loyalty in business." Walschberger added that he was sent by Judge Streitel to resolve the matter but that he was unable to compensate Mr. Rosado for the phone. Based on the meeting, Mr. Rosado believes the traffic incident in which he narrowly avoided an accident was, in fact, a hit ordered on him by the Judge in his case. Based on that belief, he withdrew his motion.

Based on those allegations, Mr. Rosado filed this civil action, purportedly on behalf of himself and others, against the following twenty-eight defendants: (1) Judge Streitel, spelled Stretel in the caption (the Judge who presided over his drug cases); (2) DiBattista (the officer who arrested Mr. Rosado in 2012); (3) Charles B. Smith (the Judge who convicted Mr. Rosado of a traffic violation); (4) the Chester County Commissioner; (5) Andrew McFarlene (the other

officer who arrested Mr. Rosado in 2012); (6) Lawrence Harmelin (a public defender who represented Mr. Rosado); (7) Heather Kelly (the public defender who represented Mr. Rosado in his traffic case); (8) the Commonwealth of Pennsylvania; (9) Christopher De Barrena-Sarobe (an assistant district attorney who prosecuted Mr. Rosado); (10) Thomas P. Hogan (the Chester County District Attorney); (11) James Gordon (the officer who arrested and cited Mr. Rosado for a traffic violation in 2013); (12) the United States; (13) Mitchel Baylarian (another public defender assigned to represent Mr. Rosado); (14) Erik T. Walschburger, spelled Walchburger in the caption  (another assistant district attorney assigned to Mr. Rosado's cases); (15) Louis Deshullo (police officer); (16) Gwenn Knapp (a Magistrate Judge who presided over hearings in Mr. Rosado's cases); (17) Joshua Scarpello (defense counsel retained by Mr. Rosado); (18) the Chester County Sheriff's Department; (19) Mark A. Bruno (a Magistrate Judge who presided over hearings in Mr. Rosado's cases); (20) the Chester County Police Department; (21) Vehicle Lock Box Sargent (apparently an employee who worked at SCI-Graterford during Mr. Rosado's incarceration there in 2013); (22) Graterford Facility Manager/Warden John Doe; (23) Renna Menna (Mr. Rosado's probation officer); (24) Nikki Kerns; (25) Jodi Kerns; (26) Richard Allen Mack; (27) State Attorney General; and (28) various John and Jane Doe defendants, including an arraignment judge and a public defender.  The complaint indicated that Mr. Rosado sought to raise claims pursuant to 42 U.S.C. §§ 1983, 1985 & 1986, 18 U.S.C. §§ 241 & 242, and 28 U.S.C. § 1361, based primarily on his arrests, prosecutions, convictions, and incarcerations.  He sought monetary damages, expungement of his convictions, vacatur of his sentences, return of his blackberry torch phone, and other miscellaneous relief.  Public dockets reflected that his efforts to challenge his conviction in state post-conviction proceedings and federal *habeas* proceedings were unsuccessful.  *See Rosado v. Mahally*, E.D. Pa. Civ. A. No. 16-1270.

In an order entered August 1, 2017, the Court denied Mr. Rosado's motion to proceed *in forma pauperis* without prejudice for lack of sufficient financial information. The Court also dismissed the other plaintiffs as parties to this case on the basis that "Mr. Rosado, a non-attorney proceeding pro se, may not raise any claims on behalf of any other plaintiffs, whether individually or in the form of a class action." (ECF No. 3.) Mr. Rosado filed a new motion to proceed *in forma pauperis*, which the Court granted.

After granting Mr. Rosado leave to proceed *in forma pauperis*, the Court screened the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismissed it on the following grounds: (1) claims based on criminal statutes were legally frivolous because those statutes did not give rise to a basis for civil liability; (2) to the extent Mr. Rosado sought mandamus relief, his claims were legally baseless because the mandamus statute does not afford a remedy against state actors; (3) Mr. Rosado failed to state a claim under 42 U.S.C. §§ 1985 and 1986 because he did not allege a conspiracy motivated by race or class based discrimination; (4) claims against the United States and the Commonwealth of Pennsylvania were legally baseless because those defendants are entitled to immunity; (5) Mr. Rosado failed to state a plausible basis for a conspiracy claim under 42 U.S.C. § 1983; (6) claims challenging the validity of Mr. Rosado's intact convictions and the proceedings leading to those convictions were not cognizable in a civil rights action; (7) the judges named as defendants were for the most part entitled to absolute judicial immunity from Mr. Rosado's claims; (8) the prosecutors named as defendants were for the most part entitled to absolute prosecutorial immunity from Mr. Rosado's claims; (9) Mr. Rosado's claims against his attorneys failed because those attorneys were not state actors for purposes of § 1983; (10) Mr. Rosado's claims challenging his arrests between 2011 and 2013, and other conduct that took place during that time were time-barred; (11) Mr. Rosado failed to state a claim against the

Commissioner of Chester County and the Pennsylvania Attorney General because he failed to plead facts showing those defendants were personally involved in the violations of his rights; (12) Mr. Rosado failed to plausibly allege that any of the named defendants were responsible for him being held beyond his sentence at SCI-Dallas; (13) Mr. Rosado failed to state a claim based on allegations that police have been watching him or following him since his release from prison in 2016; and (14) Mr. Rosado failed to state a plausible claim that three of the defendants ordered a "hit" on him.

The Court gave Mr. Rosado leave to file an amended complaint as to certain of his claims. The Court's order clearly instructed that:

> Any amended complaint shall identify all defendants in the caption so that it is clear to the Court who plaintiff is naming as defendants in this matter. Any amended complaint **shall not** raise: (a) claims based on plaintiff's convictions, sentences, or the criminal proceedings leading to his convictions, as those claims are not cognizable and may only be reasserted by plaintiff in the event his convictions are invalidated; (b) claims based on conduct that occurred between 2010 and 2013; (c) claims based on acts or omissions taken by judges in their judicial capacity that would be covered by absolute judicial immunity; (d) claims based on acts or omissions taken by prosecutors acting in their prosecutorial capacity that would be covered by absolute prosecutorial immunity; (e) claims against the United States or the Commonwealth of Pennsylvania; (f) claims against high-ranking government officials or other defendants who had no involvement in the claimed constitutional violations; (g) claims against individuals who are not state actors. Any amended complaint should clearly and briefly state the factual basis for plaintiff's claims against each defendant.

(ECF No. 7, ¶ 4.) Mr. Rosado subsequently sought, and was granted, an extension of time to file his amended complaint. He returned with four filings totaling 353 pages: (1) a "Motion for Leave to File Leave to File Amended Complaint for Permanet [sic] Injunction and Other Equitable Relief" (ECF No. 12); (2) an exhibit (ECF No. 13); (3) a document docketed as "Affidavit and Certificate of Merit" (ECF No. 14); and (4) a "Certificate of Merit and Resolution." The Court will construe these filings as an amended complaint.

As with his initial complaint, Mr. Rosado's amended complaint is lengthy, disorganized, difficult to understand, and includes many exhibits. Much of Mr. Rosado's submissions duplicate his previous submissions to this Court. It appears that he did not make any attempt to comply with the Court's directions regarding how he should limit his claims.

As with his initial complaint, the primary grounds for Mr. Rosado's claims are his assertions that he has been falsely arrested, convicted, and sentenced in the Chester County Court of Common Pleas in connection with the three proceedings referenced above. He again alleges that his convictions (and unsuccessful challenges to those convictions) are the product of a vast conspiracy among numerous judges, prosecutors, attorneys, and others spanning several years. In that regard, Mr. Rosado added a new allegation claiming that the Defendants have operated the Chester County Court of Common Pleas "to achieve through illegal means the shared goals of maximizing their profit and avoiding consequences of their actions . . . and have committed numerous acts to maintain and expand [their] enterprise, by means of Admiralty commercial jurisdiction under martial law by laws of the sea that fraudulently resemble common law." (ECF No. 12 at 6.) He also appears to be alleging that the Commonwealth lacks the ability to enforce criminal laws against him for various reasons, including the absence of a contract between himself and the Commonwealth.

Beginning on the second page of the "Motion for Leave to File Leave to File Amended Complaint for Permanet [sic] Injunction and Other Equitable Relief" (ECF No. 12), Mr. Rosado includes the following list of defendants, many of whom are the same defendants named in the initial complaint: (1) Judge Phyllis R. Stretel; (2) DiBattista; (3) Andrew McFarlene; (4) Lawrence Harmelin; (5) Christopher De Barrena-Sarobe; (6) Erik T. Walchburger; (7) Thomas P. Hogan; (8) Mitchell Baylarian; (9) Srgnt. Louis DeChullo; (10) Joshua Scarpello; (12) the

Chester County Sheriff's Department; (13) the Chester County Police Department; (14) Vehicle Lock Box Sargent; (15) John Doe Facility Manager/Warden at SCI Graterford; (16) Jodi Lynn Kerns; (17) Nikki Kerns; (18) Renna Menna; (19) Judge Charles B. Smith; (20) John Doe, the arraignment judge on April 17, 2013; (21) John Doe, the public defender who represented Mr. Rosado during a preliminary hearing; (22) Heather Kelly; (23) Magistrate Judge Gwenn Knapp; and (24) Magistrate Judge Mark A. Bruno.  It appears that these individuals are the defendants Mr. Rosado intended to include in his amended pleading.

## II.    STANDARD OF REVIEW

As Mr. Rosado is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) require the Court to dismiss the complaint if it is frivolous or fails to state a claim.  A complaint is frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  Generalized or conclusory allegations do not suffice to state a claim.  *Id.* The Court may also consider documents attached to the complaint and matters of public record in determining whether a plaintiff states a claim.  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).  Additionally, the Court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint.  *See Fogle v.*

*Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006); *cf. Ball v. Famiglio*, 726 F.3d 448, 459 (3d Cir. 2013), *abrogated on other grounds by*, *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763 (2015).  As Mr. Rosado is proceeding *pro se*, the Court construes his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

Moreover, Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to contain "a short a plain statement of the claim showing that the pleader is entitled to relief."  A district court may *sua sponte* dismiss a complaint that does not comply with Rule 8 if "the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."  *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (quotations omitted).  This Court has noted that Rule 8 "requires that pleadings provide enough information to put a defendant on sufficient notice to prepare their defense and also ensure that the Court is sufficiently informed to determine the issue."  *Fabian v. St. Mary's Med. Ctr.*, No. Civ. A. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) (quotations omitted).

## III.    DISCUSSION

Mr. Rosado's submissions fail to state a basis for a claim for essentially the same reasons that his initial submissions failed to state a claim.  The numerous deficiencies in Mr. Rosado's amended complaint are set forth below.

### A.  Mr. Rosado's Amended Complaint Fails to Comply with Rule 8

Mr. Rosado's amended complaint fails to comply with Rule 8.  His submissions are so lengthy and disorganized, it would be difficult for a defendant to meaningfully respond to or understand the basis for the claims against them.  Mr. Rosado has also submitted numerous exhibits and filings in support of his claims, many of which repeat themselves and confuse his allegations rather than clarify them.  He also inappropriately filed his amendment in several

different submissions, rather than simply filing his allegations together in one clear pleading. Although the Court has done its best to understand the basis for Mr. Rosado's claims, the manner in which Mr. Rosado has pled his claims, despite being given several months to draft his pleading, is unclear and confusing. Accordingly, his amended complaint fails to comply with Rule 8.

## B. New Frivolous Claims

If the Court understands Mr. Rosado correctly, he is bringing new claims based on allegations that the Commonwealth of Pennsylvania and the defendants involved in his prosecutions lacked authority to charge, prosecute, and convict him because the country is under martial law or admiralty law and/or because Mr. Rosado did not sign a contract with the United States (which he refers to as a corporation). These theories, and any claims based on these theories, are entirely frivolous and are dismissed as such. Additionally, to the extent Mr. Rosado is attempting to raise claims under the Racketeer Influenced and Corrupt Organizations Act or the Food Drug and Cosmetic Act based on those or other theories, those claims are also frivolous.

## C. Claims Based on Criminal Statutes

If Mr. Rosado intends to bring claims under 18 U.S.C. §§ 241 and 242 or other criminal statutes, his claims fail because those criminal statutes do not give rise to a basis for civil liability. *See Cent. Bank of Dover, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone[.]"); *Colon-Montanez v. Pennsylvania Healthcare Serv. Staffs*, 530 F. App'x 115, 118 (3d Cir. 2013) (per curiam) ("[T]hese criminal statutes [18 U.S.C. §§ 241 and 242]

provide no private right of action for use by a litigant such as Colon–Montanez.").  Accordingly, the Court will dismiss those claims as legally baseless.

### D.  Claims Based on 28 U.S.C. § 1361

If Mr. Rosado  intends to bring claims under 28 U.S.C. § 1361, which grants district courts jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff," his claims fail for the same reasons his previous claims failed.  There is no basis for mandamus relief here because §1361 does not afford a remedy against state actors.  *See Harman v. Datte*, 427 F. App'x 240, 243 (3d Cir. 2011) ("The District Court properly concluded that such a remedy was not available because, to the extent they sought mandamus relief in their complaint, 28 U.S.C. § 1361 only affords a remedy against persons who are employees or officers of the United States and neither of the defendants fall in these categories.").

### E.  Civil Rights Claims Pursuant to 42 U.S.C. §§ 1985 & 1986

If Mr. Rosado intends to bring claims under 42 U.S.C. §§ 1985(3) and 1986, his claims fail for the same reasons the claims in his initial complaint failed.  "[T]o state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States."  *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997).  "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred."  *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159,

178 (3d Cir. 2010). "[A] bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

As with his initial complaint, Mr. Rosado's amended complaint does not allege a plausible basis from which this Court could conclude that a conspiracy existed among the defendants, nor does it allege the type of race or class based discrimination that is required to state a claim under § 1985(3). *See Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006) (explaining that "§ 1985(3) defendants must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct"). As Mr. Rosado has not stated a claim under § 1985, he also cannot state a claim under § 1986. *See Clark v. Clabaugh*, 20 F.3d 1290, 1295 n. 5 (3d Cir.1994) (failure to state a § 1985 claim is fatal to his § 1986 claim).

## F.  Conspiracy Claims Under 42 U.S.C. § 1983

As with his initial complaint, Mr. Rosado's amended complaint claims that his arrests, convictions, and other bad things that have happened to him are the product of a vast conspiracy among judges, prosecutors, public defenders, and possibly others. "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "[A] bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). To state a claim for a judicial conspiracy, a complaint should allege facts concerning "the approximate time when the [conspiratorial] agreement was made, the specific parties to the agreement (i.e., which judges), the period of the conspiracy, [and] the object of the conspiracy." *Great Western*, 615 F.3d at 179.

Mr. Rosado again alludes to the existence of a government conspiracy, but he has not alleged sufficient facts to support a plausible conclusion that his treatment by authorities over the years has stemmed from a conspiracy against him rather than his own criminal conduct. Furthermore, nothing alleged plausibly supports concerted actions by the defendants or describes the contours of the alleged conspiracy. Accordingly, to the extent Mr. Rosado is resting his amended complaint on conspiracy claims, those claims fail.

### G. Challenges to Mr. Rosado's Convictions Under 42 U.S.C. § 1983

Mr. Rosado predominantly challenges the constitutionality of his numerous state convictions pursuant to 42 U.S.C. § 1983, and asks this Court to vacate those convictions, invalidate his criminal sentences, and reward him damages for having been wrongfully convicted. "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Accordingly, any attempts to vacate Mr. Rosado's convictions must be pursued in a *habeas* case rather than a civil rights action.[5]

Furthermore, "to recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation

---

[5] Notably, Mr. Rosado already filed a petition for a writ of *habeas corpus* challenging some of the convictions underlying his current civil rights claims. *See Rosado v. Mahally*, E.D. Pa. Civ. A. No. 16-1270. The petition was dismissed in May of 2016.

omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983

action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable

relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal

prison proceedings)— if success in that action would necessarily demonstrate the invalidity of

confinement or its duration." (emphasis omitted)).  As Mr. Rosado's convictions and sentences

have not been reversed, expunged, or otherwise invalidated, none of his claims challenging his

convictions are currently cognizable under § 1983.   In other words, Mr. Rosado cannot raise

claims challenging the constitutionality of any aspect of the legal proceedings leading to his

convictions, or the failure of the state courts to vacate those convictions.  That is so regardless of

whether *habeas* relief is still available to Mr. Rosado.  *See Williams v. Consovoy*, 453 F.3d 173,

179 (3d Cir. 2006).  The Court will dismiss any such non-cognizable claims without prejudice to

Mr. Rosado filing a new complaint only in the event those convictions are ever vacated.

### H.  Absolute Judicial Immunity and Absolute Prosecutorial Immunity

Mr. Rosado again appears to be raising claims against judges who handled his criminal cases

and prosecutors who prosecuted charges against him on behalf of the Commonwealth.  Judges

are entitled to absolute immunity from civil rights claims that are based on acts or omissions

taken in their judicial capacity, so long as they do not act in the complete absence of all

jurisdiction.  *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Azubuko v. Royal*, 443 F.3d

302, 303-04 (3d Cir. 2006) (per curiam).  Prosecutors are entitled to absolute immunity from

liability under § 1983 for acts that are "intimately associated with the judicial phase of the

criminal process" such as "initiating a prosecution and . . . presenting the State's case."  *Imbler v.

Pachtman*, 424 U.S. 409, 430-31 (1976).  District Attorneys and other supervisory prosecutors

are likewise entitled to absolute immunity from claims based on their role in pursuing a

prosecution on behalf of the Commonwealth. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009).

To the extent Mr. Rosado is suing judges and magistrate judges based on the manner in which they ruled in or handled his criminal cases, his claims are barred by judicial immunity.[6] Additionally, Mr. Rosado cannot bring any claims against prosecutors and/or supervisory prosecutors based on their involvement in prosecuting his criminal cases.

## I. Claims Against Mr. Rosado's Attorneys

It appears that Mr. Rosado still intends to pursue claims against his defense attorneys. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Mr. Rosado has sued several attorneys assigned to represent him but those attorneys are not state actors for purposes of § 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." (footnote omitted)); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court."). Although individuals who are not state actors may be treated as state actors if they act in concert with state officials, Mr. Rosado has again failed to plead sufficient facts to plausibly suggest that his attorneys could be treated as state actors on that basis. Accordingly, any claims against those defendants will be dismissed.

---

[6] If Mr. Rosado is alleging that the judges acted in the complete absence of jurisdiction because the country is under martial law or based on admiralty law his arguments are frivolous.

**J. Time-Barred Claims**

As previously explained to Mr. Rosado, many of his claims are time-barred. The Court understands Mr. Rosado to be raising claims based on several arrests that took place between 2011 and 2013, as well as claims based on the conduct of correctional officers and others that took place before July 26, 2015. Pennsylvania's two-year limitations period applies to those claims. See 42 Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007). "[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace*, 549 U.S. at 397. For other § 1983 claims, the two-year limitations period began to run from the time Mr. Rosado "knew or should have known of the injury upon which [his] action is based." *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998).

Mr. Rosado filed this civil action on July 26, 2017. As explained in the Court's previous memorandum, the challenged arrests all took place between 2011 and 2013, and Mr. Rosado's criminal dockets reflect that he was detained pursuant to legal process shortly after he was arrested on the occasions in question. Mr. Rosado was also well aware of the alleged legal defects in the warrant that served as the basis for his arrest in 2012, as he unsuccessfully asserted those challenges in state court. Additionally, to the extent Mr. Rosado is challenging the conduct of correctional officers at Graterford in 2013, or other events taking place before 2015, Mr. Rosado knew or should have known of the basis for his claims when the events giving rise to those claims occurred. As Mr. Rosado did not file this case until after the statute of limitations expired for those claims, the claims are time-barred.

**K. Claims Based on Incarceration at SCI-Dallas**

If Mr. Rosado is still pursuing claims based on his allegation that he was held beyond his maximum sentence at SCI-Dallas, he has not stated a claim for relief. To the extent Mr. Rosado is challenging the calculation of his sentence, his claims are not cognizable in a civil rights action. *See Royal v. Durison*, 254 F. App'x 163, 165-66 (3d Cir 2007). If, instead, Mr. Rosado is claiming he was held beyond his maximum date he still has not stated a claim. A plaintiff must establish three elements to prevail on an Eighth Amendment claim against a prison official for wrongful incarceration: "(1) [the] prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) a causal connection between the official's response to the problem and the unjustified detention." *Montanez v. Thompson*, 603 F.3d 243, 252 (3d Cir. 2010) (citing *Sample v. Diecks*, 885 F.2d 1099, 1108 (3d Cir. 1989). Mr. Rosado has not plausibly pled these elements with respect to any of the defendants named in this case.

**L. Claims Based on the Alleged "Hit" on Mr. Rosado and His Blackberry Torch**

To the extent Mr. Rosado is still pursuing claims based on allegations that Judge Streitel conspired with a prosecutor (Walschberger) and a police officer (DeShullo) to murder him, his allegations fail to state a claim. As noted above, "to properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010); *see also Capogrosso v. The Supreme Court of N.J.*, 588 F.3d 180, 184-85 (3d Cir. 2009). Here, Mr. Rosado's claim is based on the fact that he was almost run off of the road after filing a motion

for the return of his phone.  As in his initial complaint, his amended complaint reflects that he believes that incident resulted from a "hit" put on him by Judge Streitel, DeShullo, and Walschburger because of a subsequent meeting with DeShullo and Walschburger about his motion during which DeShullo told Mr. Rosado that the phone had been destroyed and advised him to "be careful and avoid accidents."  The Court previously dismissed this claim on the basis that Mr. Rosado's allegations failed to plausibly allege a conspiracy to murder him.  As his amended pleading relies on essentially the same allegations, the amended complaint also fails to state a claim.  Additionally, Mr. Rosado cannot sustain a constitutional claim based on allegations that the defendants destroyed his property because the Pennsylvania Tort Claims Act provides Mr. Rosado with an adequate state remedy.  *See Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property).

### M. Remaining Claims

Mr. Rosado's remaining claims concern his allegations that police officers have been following him or watching him.  However, as with his initial complaint, he does not appear to allege that police are engaging in activity such as searches or seizures that would trigger the protections of the Fourth Amendment.  Additionally, Mr. Rosado's allegations are so generalized that it is difficult for the Court to discern any basis for a plausible constitutional claim here.

Having reviewed Mr. Rosado's entire filing, the Court cannot discern a clear basis for a timely claim against the named defendants.  To the extent Mr. Rosado intended to raise claims that are not addressed here, the Court could not discern a plausible basis for proceedings on those claims in this lawsuit.

The Court notes that in Mr. Rosado's "Affidavit and Certificate of Merit" (ECF No. 14) and "Certificate of Merit and Resolution" (ECF No. 15), he alleges that he was illegally stopped by an officer of the Pennsylvania State Police, identified as Trooper Dugan, on July 21, 2017. However, Trooper Dugan was not identified anywhere as a defendant in Mr. Rosado's initial complaint nor is he clearly identified as a defendant in Mr. Rosado's more recent submissions. Furthermore, this allegation is entirely new as it was not mentioned in Mr. Rosado's initial submissions and does not have anything to do with his numerous allegations against officers of the Chester County Police Department. Accordingly, if Mr. Rosado seeks to proceed on any claims against Trooper Dugan based on the July 21, 2017 stop, he must initiate a new civil action naming Trooper Dugan as a defendant in the caption of his complaint.

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss Mr. Rosado's amended complaint. Mr. Rosado will not be given further leave to amend because the Court concludes that further efforts at amendment would be futile. The Court will dismiss all of Mr. Rosado's claims with prejudice with the exception of (1) any claims that were dismissed based solely on *Heck v. Humprhey*, 512 U.S. 477, 486-87 (1994), which are dismissed without prejudice to Mr. Rosado filing those claims in a new civil action in the event his convictions are ever vacated or invalidated; and (2) claims based on the incident with Trooper Dugan, which Mr. Rosado may pursue by initiating a new civil action against Trooper Dugan. An appropriate order follows.